UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60145-DAMIAN/VALLE

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 853
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

OLUSHOLA YUSUF and
SAMAN CALA GIMENEZ,

Defendants.
_____/

FILED BY __BM__ D.C.
Jun 17, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States, or a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations, oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Oxycodone, sometimes prescribed under the brand name OxyContin or in combination with acetaminophen under the brand name Percocet, was used to treat severe pain. Oxycodone, as other opioids, was highly addictive.

5. Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine, were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the Drug Enforcement Administration ("DEA") assigned a unique registration number to each qualifying medical practitioner, including physicians and nurse practitioners.

6. Chapter 21 of the Code of Federal Regulations, Section 1306.04, governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription not issued in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." *Id.*

7. All prescriptions for controlled substances had to be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a).

8. Chapter 21 of the Code of Federal Regulations, Section 1306.06 governed the filling of prescriptions and provided: "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner." In addition, Chapter 21 of the Code of Federal Regulations, Section 1306.04(a), provided that:

> The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment … is not a prescription within the meaning and intent of Section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

## THE DEFENDANT AND RELATED ENTITIES

9. Boots LLC d/b/a Striderite Pharmacy ("Boots") was a pharmacy located at 7326 Royal Palm Blvd., Margate, Florida 33063, and was owned by **OLUSHOLA YUSUF**.

10. Chans Pharmacy Plus, Inc. ("Chans") was a pharmacy located at 2092 N University Drive, SPC 9, Pembroke Pines, Florida 33024, and was nominally owned by **OLUSHOLA YUSUF**'s relative. **YUSUF** was the beneficial owner and operator of Chans.

11. Defendant **OLUSHOLA YUSUF**, a resident of Hillsborough County, Florida, was the owner of Boots. **YUSUF** is a Registered Pharmacist with the Florida Department of Health.

12. Defendant **SAMAN CALA GIMENEZ**, a resident of Hillsborough County, Florida, filled prescriptions ~~in his own name and~~ in the name of others at Boots and Chans.

13. Betscy Kurian was a pharmacist in charge at Chans.

## COUNT 1
## Conspiracy to Distribute a Controlled Substance
## (21 U.S.C. § 846)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April 2021, and continuing through in or around October 2024, in Broward County, in the Southern District of Florida, and elsewhere, the Defendants,

**OLUSHOLA YUSUF and
SAMAN CALA GIMENEZ,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, Betscy Kurian, and others known and unknown to the Grand Jury, to distribute and dispense a controlled substance, that is, distributing oxycodone, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

It is further alleged that the controlled substance involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) dispensing and distributing dangerous and addictive controlled substances, including oxycodone, outside the usual course of practice and not for a legitimate medical purpose; (b) filling prescriptions in exchange for cash payments in order to generate and conceal large profits; (c) purchasing prescriptions from patients in exchange for cash to aggregate the controlled substances; and (d) diverting the proceeds for their personal use and benefit and to further the conspiracy.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **OLUSHOLA YUSUF** owned and operated Boots and was the true owner and operator of Chans. **YUSUF** concealed her ownership of Chans by causing Chans to be opened in the name of a relative.

5. **OLUSHOLA YUSUF** and Betscy Kurian, both registered pharmacists, dispensed controlled substances, including oxycodone, to patients who filled prescriptions at Boots and Chans outside the usual course of practice and not for a legitimate medical purpose.

6. **OLUSHOLA YUSUF** and Betscy Kurian dispensed oxycodone to nearly all of Boots' and Chans' patients without medical need and dispensed high dosages of oxycodone to patients for extended periods of time. **YUSUF** and Kurian commonly dispensed oxycodone 30mg, which is the highest short-acting dosage strength of oxycodone and is highly addictive and dangerous.

7. **OLUSHOLA YUSUF** and Betscy Kurian ignored and disregarded obvious signs of addiction and drug-diversion in patients who filled prescriptions at Boots and Chans but nevertheless dispensed oxycodone to these patients.

8. **SAMAN CALA GIMENEZ** and others purchased numerous prescriptions for controlled substances, including oxycodone, from multiple patients to fill at Boots and Chans and aggregate the pills for their own use.

9. **OLUSHOLA YUSUF** and Betscy Kurian dispensed large quantities of controlled substances, including oxycodone, to patients and patient recruiters, including **SAMAN CALA GIMENEZ**, in exchange for cash payments to Boots and Chans at rates that were well above market for these substances. Patients and patient recruiters often paid Boots and Chans in cash even though they had insurance that covered some or all of the cost of prescription medications.

10. In total, from in or around April 2021 through in or around August 2024, **OLUSHOLA YUSUF**, Betscy Kurian, **SAMAN CALA GIMENEZ**, and others dispensed and caused to be dispensed at least 335,351 pills of oxycodone 30 mg to patients of Boots and Chans.

All in violation of Title 21, United States Code, Section 846.

## COUNTS 2-6
### Distributing and Dispensing a Controlled Substance
### (21 U.S.C. § 841(a)(1))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth as to each Count below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**OLUSHOLA YUSUF and
SAMAN CALA GIMENEZ,**

did knowingly and intentionally distribute and dispense a controlled substance, that is, distributing oxycodone, outside the usual course of professional practice and not for a legitimate medical purpose through the following prescriptions:

| COUNT | CONTROLLED SUBSTANCE | ON OR ABOUT DATE | "PATIENT" INITIALS |
|---|---|---|---|
| 2 | Oxycodone 30mg | 02/02/24 | I.C. |
| 3 | Oxycodone 30mg | 03/08/24 | I.C. |
| 4 | Oxycodone 30mg | 06/06/24 | I.C. |
| 5 | Oxycodone 30mg | 07/23/24 | R.I. |
| 6 | Oxycodone 30mg | 08/20/24 | R.I. |

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1.  The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **OLUSHOLA YUSUF** and **SAMAN CALA GIMENEZ**, have an interest.

2.  Upon conviction of a violation of Title 21, United States Code, Sections 841 and/or 846, as alleged in this Indictment, the defendants shall forfeit to the United States any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, pursuant to Title 21, United States Code, Section 853.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

LORINDA LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
JACQUELINE Z. DEROVANESIAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **25-CR-60145-DAMIAN/VALLE**

v.

OLUSHOLA YUSUF and
SAMAN CALA GIMENEZ,
                    /
            Defendants.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- ☐ Miami    ☐ Key West    ☐ FTP
- ☑ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take  7-10  days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☑ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Raag Singhal  Case No. 24-CR-60114
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
JACQUELINE DerOVANESIAN
DOJ Trial Attorney
FL Bar No.    125662

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** OLUSHOLA YUSUF

**Case No:**

Count #: 1

Title 21, United States Code, Section 846

Conspiracy to Distribute a Controlled Substance
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years to life
* Max. Fine: $1 Million

Counts #: 2 – 6

Title 21, United States Code, Section 841(a)(1)

Distributing and Dispensing a Controlled Substance
* Max. Term of Imprisonment: 20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $1 Million

\*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: SAMAN CALA GIMENEZ

**Case No**: _____

Count #: 1

Title 21, United States Code, Section 846

Conspiracy to Distribute a Controlled Substance
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years to life
* Max. Fine: $1 Million

Counts #: 2 – 6

Title 21, United States Code, Section 841(a)(1)

Distributing and Dispensing a Controlled Substance
* Max. Term of Imprisonment: 20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $1 Million

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.